2026 IL App (2d) 250575-U
Nos. 2-25-0575, 2-25-0576, 2-25-0577, 2-25-0581, & 2-25-0582 cons.
Order filed April 13, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* N.R., a Minor.

(The People of the State of Illinois, Petitioner-Appellee
v. Yoni R., Respondent-Appellant.)

Appeal from the Circuit Court of Kane County.
Honorable Kathryn D. Karayannis, Judge, Presiding.
No. 22-JA-148.

*In re* E.R., a Minor.

(The People of the State of Illinois, Petitioner-Appellee
v. Yoni R., Respondent-Appellant.)

Appeal from the Circuit Court of Kane County.
Honorable Kathryn D. Karayannis, Judge, Presiding.
No. 22-JA-150.

*In re* Y.R., a Minor.

(The People of the State of Illinois, Petitioner-Appellee
v. Yoni R., Respondent-Appellant.)

Appeal from the Circuit Court of Kane County.
Honorable Kathryn D. Karayannis, Judge, Presiding.
No. 22-JA-151.

(The People of the State of Illinois, Petitioner-Appellee
v. Yoni R., Respondent-Appellant.)

Appeal from the Circuit Court of Kane County.
Honorable Kathryn D. Karayannis, Judge, Presiding.
No. 22-JA-152.

_____

*In re* ELIAS R., a Minor.

(The People of the State of Illinois, Petitioner-Appellee
v. Yoni R., Respondent-Appellant.)

Appeal from the Circuit Court of Kane County.
Honorable Kathryn D. Karayannis, Judge, Presiding.
No. 22-JA-153.

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   While the trial court erred in its application of the law-of-the-case doctrine, the trial court did not abuse its discretion by denying respondent's request for a stay.

¶ 2    Respondent, Yoni R., appeals from the trial court's order striking his motion to stay the best interests hearing in proceedings to terminate his parental rights. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    As the record in this case is voluminous, we recite only those facts necessary to the resolution of this appeal.

¶ 5    Respondent and Carolina F. were the biological parents to five minor children: N.R., E.R., I.R., Y.R., and E.R. On December 22, 2022, the State filed petitions for adjudication in the trial court alleging that each of the five children was neglected based on their parents' history of

domestic violence. That same day, the State obtained a temporary order placing the children in the custody of the Department of Children and Family Services (DCFS). The trial court also appointed a guardian *ad litem* (GAL) for the children.

¶ 6 On February 10, 2023, respondent and Carolina stipulated to the factual basis of the State's petition. On March 10, 2023, the trial court adjudicated the children neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2022)) based on the parents' stipulated domestic violence. The trial court also found that respondent and Carolina were unfit and unable to care for the children, and made the children wards of the court. See *id.* §§ 2-23, 2-27. DCFS was named their guardian and custodian, with the right to place them in foster care. Three children were placed with a fictive kin foster parent, while the remaining two were placed with a maternal aunt and a half-sibling.

¶ 7 On October 29, 2024, the State filed petitions to terminate the parental rights of respondent and Carolina for each of the children. On December 3, 2024, the trial court began the evidentiary hearing concerning the parent's fitness. The hearing concluded on May 9, 2025, after several days of testimony.

¶ 8 On June 26, 2025, before the trial court ruled on the parents' fitness, respondent moved to stay the best interests portion of the proceedings based upon a service appeal before DCFS concerning the children's paternal grandparents' request to be considered for placement of the children. On July 3, 2025, the trial court denied respondent's motion to stay, reasoning that resolution of the grandparents' service appeal was not necessary before the best interest portion of the proceedings because a trial court may terminate a parent's rights if it is in their child's best interest, even if the child is not in a pre-adoptive home. The trial court also noted that the cases

had been pending since 2022 and determined that it would not be in the children's best interest to extend the proceedings and "keep them in limbo."

¶ 9    On July 11, 2025, the trial court found that the State proved by clear and convincing evidence that respondent and Carolina were unfit. The hearing on the children's best interests was initially scheduled to begin on September 18, 2025. However, that date was stricken while Carolina attempted to appeal the trial court's fitness order, which was docketed in this court as case No. 2-25-0342. The appeal was dismissed on October 24, 2025, after Carolina failed to file an appellant's brief. Thereafter, the best interests hearing was rescheduled for December 23, 2025.

¶ 10    On November 15, 2025, respondent again moved to stay the best interests hearing based on the paternal grandparents' attempts to be a placement for the children. He noted that his parents' administrative appeal was dismissed and argued that they had not yet been adequately considered for placement. Thus, respondent requested that the trial court stay the best interests portion of the proceedings until the grandparents could exhaust their attempts with DCFS for placement of the children. On December 1, 2025, the State moved to strike respondent's motion. The State argued that the law-of-the-case doctrine prevented respondent from seeking a stay based on the same reasons already rejected by the trial court.

¶ 11    On December 5, 2025, the trial court granted the State's motion to strike following a hearing. The trial court found that "[e]ssentially nothing has changed" and that "it is not in the best interest of the children to continually be extending this case and deciding on their permanency when things are repeatedly being done to extend this and request extensions of this." The trial court also noted, in reference to respondent's motion to stay, that it "previously ruled on an almost identical motion." Therefore, the trial court concluded that "[t]he law and the rule of the case applies and my findings apply, and I'm granting the State's motion to strike." The trial court also

- 4 -

expressly refused to enter a finding of immediate appealability under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Respondent filed a notice of appeal on December 22, 2025, identifying the trial court's July 3, 2025, and December 5, 2025, orders as the orders being appealed.

¶ 12                                                 II. ANALYSIS

¶ 13    We begin by addressing our jurisdiction. Though we previously denied the State's motion to dismiss this appeal for a lack of jurisdiction, we have a continuing duty to determine if we have jurisdiction and to dismiss the appeal if jurisdiction is lacking. *Mo v. Hergan*, 2012 IL App (1st) 113179, ¶ 30. The State maintains that we lack jurisdiction because respondent's motion should be considered a motion for a continuance and therefore not immediately appealable, and because the trial court did not explicitly rule on respondent's motion.

¶ 14    "It has long been established that the denial of a motion to stay a proceeding may be treated as a denial of a request for a preliminary injunction, which may form the basis for an interlocutory appeal as of right pursuant to" Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 20. To determine whether an order constitutes an appealable injunction, we look to its substance, not its form, and we broadly construe the meaning of the term "injunction." *In re A Minor*, 127 Ill. 2d 247, 260-61 (1989).

¶ 15    Here, respondent's motion is properly characterized as a motion to stay. A motion to stay in this context generally asks to pause proceedings until related separate proceedings, such as an arbitration or criminal case, conclude. See, *e.g.*, *Mahmood*, 2021 IL App (1st) 200584, ¶ 6 (motion to stay pending related federal criminal proceedings). The purpose is to promote the orderly administration of justice and judicial economy. *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 68 (2007). That is what respondent requested here, as he sought to stay the parental termination

- 5 -

proceedings pending resolution of his parents' claims before DCFS to prevent potentially conflicting rulings regarding the children's permanent placement. Consequentially, respondent's motion was appropriately styled as one seeking a stay.

¶ 16    Though the trial court did not directly rule on respondent's motion to stay, its actions are still injunctive in nature. Actions of the trial court having the force and effect of an injunction are appealable even if called something else. "An injunction has been defined as 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing.' " *Mahmood*, 2021 IL App (1st) 200584, ¶ 22 (quoting *In re A Minor*, 127 Ill. 2d at 261). The trial court's order refusing respondent's request for a stay has the same effect as the denial of an injunction. See *People v. Brodsky*, 2025 IL App (3d) 240689-U, ¶ 28 (trial court's order striking motion to dissolve injunction "in substance refused to dissolve an existing injunction" and was thus appealable under Rule 307(a)(1)). Thus, we conclude that we have jurisdiction under Rule 307(a)(1).

¶ 17    However, our jurisdiction is limited to review of the trial court's December 5, 2025, order granting the State's motion to strike. As respondent concedes, he did not timely file an appeal of the trial court's July 3, 2025, order denying his first motion to stay.

¶ 18    The State next argues that respondent lacks standing to bring this appeal. In the State's view, respondent is seeking to assert the rights of his children and parents. However, contrary to the State's assertions, this appeal pertains to the propriety of the trial court's order granting the State's motion to strike and refusing respondent's request for a stay, not any rights that belong to respondent's children or parents.

¶ 19    Proceeding to the merits, respondent argues that the trial court erred by applying the law-of-the-case doctrine and granting the State's motion to strike. The application of the law-of-the-

case doctrine is a question of law, which we review *de novo*. *166 Symphony Way, LLC v. U.S. Property Investments Group, LLC*, 2025 IL App (2d) 240040, ¶ 24. The doctrine "bars relitigation of an issue that has already been decided in the same case, such that the resolution of an issue presented in a prior appeal is binding and will control upon remand in the trial court and in a subsequent appeal before the appellate court." *Id.* It applies to both questions of law and fact, and encompasses a court's explicit decisions as well as those decisions made by necessary implication. *Id.* The purpose behind this doctrine is to protect the settled expectations of the parties, ensure uniformity of decision, maintain consistency during the course of a single case, effect proper administration of justice, and bring litigation to an end. *Id.* ¶ 25. However, the law-of-the-case doctrine applies only after a final judgment in the trial or appellate court. See, *e.g.*, *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 16 (law-of-the-case applies to final judgments in the appellate court, even after an interlocutory appeal); *People v. Patterson*, 154 Ill. 2d 414, 469 (1992) ("a finding of a final judgment is required to sustain application of the doctrine").

¶ 20    Here, the July 3, 2025, order was not a final judgment as it did not fix absolutely and finally the rights of the parties and dispose of the entire controversy. See *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 21. A ruling that is not a final order does not affect or determine any subsequent proceeding. *BankFinancial, FSB v. Tandon*, 2013 IL App (1st) 113152, ¶ 18. Indeed, trial courts have the inherent power to review, modify, or vacate an interlocutory order at any time before final judgment, even if the interlocutory order was appealable. *Doe v. Illinois Department of Professional Regulation*, 341 Ill. App. 3d 1053, 1059 (2003) Thus, we agree with respondent that the law-of-the-case doctrine was inapplicable.

¶ 21    The State contends that this conclusion would lead to the absurd result of litigants repeatedly seeking a stay and appealing adverse decisions, which would effectively give the litigant the stay they were seeking. Though we doubt that will occur, we need not expand the law-of-the-case doctrine in the manner the State asks, as there are safeguards if such abusive dilatory conduct does occur. Should a litigant repeatedly file such baseless motions and appeals, they open themselves up to the possibility of sanctions under Illinois Supreme Court Rules 137 (eff. Jan. 1, 2018) and 375(b) (eff. Feb. 1, 1994). We believe that the possibility of sanctions adequately deters repeated baseless motions.

¶ 22    Even though the trial court erred in its application of the law-of-the-case doctrine, we affirm the trial court's December 5, 2025, order because denying respondent's request for a stay was not an abuse of discretion. "[A] reviewing court can uphold the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007); see *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 44.

¶ 23    A trial court " '*may* stay proceedings as part of its inherent authority to control the disposition of cases before it.' " (Emphasis in original.) *Cullinan v. Fehrenbacher*, 2012 IL App (3d) 120005, ¶ 10 (quoting *Estate of Bass*, 375 Ill. App. 3d at 68). We will not disturb the trial court's decision on a motion to stay unless that decision was an abuse of discretion. *Id.* "A trial court abuses its discretion when it 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Zurich Insurance Co. v.*

*Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595, (1991) (quoting *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326 (1986)).

¶ 24     Here, the record makes clear that the trial court considered the merits of respondent's motion to stay and exercised its discretion when it granted the State's motion to strike.  The trial court's oral ruling noted the similarities between the two motions and found that "[e]ssentially nothing has changed."  It again determined that the question of the children's placement with their paternal grandparents was not a reason to delay the parental termination proceedings since the placement of the children was a separate issue.  The trial court also again expressed its concern about how long the proceedings had already taken.  The trial court therefore concluded that "for the same reasons that I found in July I find now, [it is] not in these children's best interest to stay this."

¶ 25     Such a ruling is not an abuse of discretion.  As the trial court noted, the issue of where the children will be placed is not before the trial court at the best interest portion of the proceedings. See *In re J.H.S.*, 2025 IL App 250026-U, ¶ 38.  Rather, the sole issue is whether it is in the children's best interests to terminate their parents' parental rights.  *Id.*  A trial court may terminate parental rights even if there is no potential adoptive home for the children.  *In re Deandre D.*, 405 Ill. App. 3d 945, 956 (2010).  The trial court may, of course, consider the status of the paternal grandparents' proceedings and their possible placement for the children when determining if it is in the children's best interests to terminate their parents' rights.  See 705 ILCS 405/1-3(4.05) (West 2022).

¶ 26     Further, the trial court appropriately noted how long the proceedings had already taken and found that it would not be in the children's best interest to continue to delay the proceedings.  Our supreme court has observed that it is not in a child's best interest for their "status to remain in

limbo for an extended period of time." *In re D.L.*, 191 Ill. 2d 1, 13 (2000); see *In re J.C.*, 2021 IL App (2d) 210306-U, ¶ 44 ("It is in the interests of children to receive prompt, just, and final resolution of their status rather than to remain in limbo"). These proceedings began in December 2022 with the first portion of the bifurcated parental termination hearing beginning in December 2024 and the children's status remaining in limbo as of the trial court's ruling in December 2025. Therefore, the trial court did not abuse its discretion by refusing to stay the proceedings pending resolution of the paternal grandparents' claims before DCFS.

¶ 27 Given the delays that have already occurred in this case, we find good cause to issue our mandate immediately to allow the trial court to expeditiously hold its best interests hearing. See Ill. S. Ct. R. 368(a).

¶ 28 III. CONCLUSION

¶ 29 For the reasons stated, we affirm the judgment of the circuit court of Kane County and issue our mandate forthwith.

¶ 30 Affirmed; mandate to immediately issue.